ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| VILMA LUZ MENÉNDEZ MELÉNDEZ Y/O ENRIQUE MUNTANER MENÉNDEZ<br><br>Parte Recurrida<br><br>v.<br><br>AUTO ELECTRIC IMPORT, INC.; **CARIBE FEDERAL CREDIT UNION**; ALEX RIVERA BLANCO, AGENTE RESIDENTE<br><br>Parte Recurrente | KLRA202500310 | *Revisión Judicial,* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: SAN-2024-0020231<br><br>Sobre: Compraventa de Vehículos de Motor |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de junio de 2025.

Compareció ante nosotros Caribe Federal Credit Union (en adelante, "CFCU" o "Recurrente"), mediante "**Revisión Judicial**" y nos solicitó que revoquemos la *Resolución* que emitió el Departamento de Asuntos del Consumidor (en adelante, "DACo") el 28 de marzo de 2025.[1] En el referido dictamen, DACo declaró Ha Lugar la "**Querella**" que presentó la Sra. Vilma Luz Menéndez Meléndez (en adelante, la "señora Menéndez Meléndez" o "Recurrida") en contra de Auto Electric Import Inc. (en adelante, "Auto Electric"), el Sr. Alex Rivera Blanco (en adelante, el "señor Rivera Blanco") y CFCU. En consecuencia, declaró nulo el contrato de compraventa y ordenó la devolución de las prestaciones entre las partes.

Por los fundamentos que expondremos a continuación, se *confirma* el dictamen recurrido.

---

[1] La *Resolución* fue notificada el mismo día, a saber: el 28 de marzo de 2025. *Véase*, Apéndice del Recurrente, págs. 41-54.

**I.**

Mediante contrato de compraventa, la señora Menéndez Meléndez le compró a Auto Electric un vehículo de motor usado, marca Toyota, modelo 4 Runner TRD Pro, del año 2021, por el precio de $39,000.00.[2] Como parte del trámite, la Recurrida pagó la suma de $13,000.00, por concepto de pronto. El balance final lo financió a través de un contrato de venta al por menor a plazos con CFCU.[3]

Durante la primera semana luego de efectuada la compra, le señora Menéndez Meléndez notó que algo no funcionaba bien con la unidad comprada. Inmediatamente lo reportó a Auto Electric para que éste inspeccionara el vehículo.[4] Sin embargo, el concesionario no respondió a su reclamo. A la sazón, llevó el auto a Braulio Agosto Motors, centro de servicio autorizado de la marca Toyota, para que lo revisaran. Después de examinar la unidad, el centro reportó lo siguiente:

> […] condición proviene de Rack and Pinnion (sic) defectuoso, se pudo notar unidad fue reparada por colission (sic) la cual no da parámetros de fabricante para el alineamiento, por el cual no se recomienda reemplazo de Rack and Pinnion (sic) hasta correguir (sic) lo antes mencionado. […][5]

Tras este diagnóstico, la señora Menéndez Meléndez notificó a Auto Electric, para que por medio de la garantía reparara la unidad o la reemplazara. Después de varios intentos, Auto Electric finalmente recibió el vehículo para la correspondiente inspección y reparación.[6]

Así pues, Auto Electric llevó la unidad a un taller de mecánica para su evaluación y reparación. Después de varias semanas, Auto Electric le entregó el vehículo a la señora Menéndez Meléndez, pero los ruidos continuaron y el problema que presentaba en el chasis empeoró. Ante ello, la Recurrida reclamó otra vez a Auto Electric para que le reparara o le reemplazara el vehículo en garantía. Empero, Auto Electric no respondió, ni le proveyó otras alternativas a la Recurrida.[7]

---

[2] Apéndice del Recurrente, págs. 23-24.
[3] Íd., págs. 25-28.
[4] Íd., págs. 41-50.
[5] Íd.
[6] Íd.
[7] Íd.

En vista de lo anterior, la señora Menéndez Meléndez condujo su auto a un taller de hojalatería y pintura para que le realizaran una inspección. Examinada la unidad, el taller reportó los siguientes hallazgos:

> Luego de dicha inspección nos percatamos que, dicha unidad, recibió un impacto considerable por la parte de abajo, el cual afectó grandemente el Chasis, el mismo no está alineado con las medidas del fabricante y según nuestra experiencia se encuentra torcido hacia arriba por el impacto recibido de abajo hacia arriba. Además, se encontró liqueo de aceite por el *Rack & Pinion* debido a no estar correctamente alineado por el impacto en el Chasis y por ende obliga al Retenedor de Aceite a no hacer su función correcta; también se pudo notar el *Crank* de la Transmisión doblado y el Tanque de la Gasolina También doblado debido al impacto recibido. El cinturón del lado izquierdo delantero fue manipulado para poder usarlo, eliminando así la seguridad de tranque por lo que representa un riesgo para el Conductor. Presenta las gomas delanteras fuera de alineación y sería imposible corregir por el defecto que presenta el Chasis. Se recomienda reemplazar el Chasis por uno nuevo, ya que corregir o reparar el existente conllevaría, a largo plazo, que el vehículo siga presentando problemas mecánicos.[8]

Surge del expediente que Auto Electric no le informó a la Recurrida que el vehículo adquirido había sido impactado.

Insatisfecha con la respuesta de Auto Electric, el 18 de noviembre de 2024, la señora Menéndez Meléndez presentó una **"Querella"** ante el DACo, en la que denunció que Auto Electric no asumió su responsabilidad de responder por la venta de un auto defectuoso.[9] Añadió que nunca se le informó sobre las condiciones de la unidad, sus reparaciones y alteraciones, por lo que su consentimiento a la compraventa estuvo viciado. Como último intento de buena fe, la Recurrida le solicitó a Auto Electric la rescisión del contrato de compraventa, pero éste no ha respondido a su petición. En consecuencia, reclamó la resolución del contrato y la devolución de las prestaciones, más daños por la suma de $13,000.00, gastos, costas y honorarios de abogado.[10]

En respuesta a la **"Querella"**, CFCU negó la mayoría de las alegaciones y afirmó que no respondía por los defectos alegados, toda vez

---

[8] Íd.
[9] Íd., págs. 1-8.
[10] Íd.

que es responsabilidad del vendedor asegurar la calidad del producto vendido.[11]

Después de múltiples trámites procesales, el DACo emitió una *Resolución* en la que le anotó la rebeldía de Auto Electric y CFCU por no comparecer a la vista administrativa.[12] Así pues, declaró "Ha Lugar" la "**Querella**" interpuesta por la Recurrida, decretó nulo el contrato de compraventa y ordenó la devolución de las prestaciones en un término no mayor de treinta (30) días, contados a partir de la notificación del dictamen.[13]

Específicamente, decidió que Auto Electric debía reembolsar a la Recurrida la cantidad de $13,000.00 que esta pagó en calidad de pronto pago y devolver a CFCU el dinero recibido del préstamo. De otra parte, ordenó a este último a restituirle a la señora Menéndez Meléndez todos los pagos mensuales que hizo bajo el contrato de venta al por menor a plazos. Por último, la Recurrida debía entregar el vehículo a Auto Electric.[14]

Oportunamente, el Recurrente solicitó reconsideración a DACo.[15] Transcurrido el término reglamentario para acoger la moción, la agencia no actuó. Insatisfecho, CFCU acudió ante este tribunal intermedio mediante el recurso de revisión de epígrafe, en el que señaló los siguientes cinco errores:

A. Erró el Departamento de Asuntos del Consumidor (DACo) al emitir una Resolución, sin haber notificado a todas las partes de la celebración de la Vista Administrativa, conforme a derecho.

B. Erró el Departamento de Asuntos del Consumidor (DACo) al basar su determinación en evidencia inadmisible, tras no haber sido producida conforme a derecho.

C. Erró el Departamento de Asuntos del Consumidor (DACo) al admitir en evidencia un informe pericial que nunca fue anunciado ni notificado antes de la celebración de la vista administrativa, que no estuvo acompañado con el testimonio de la persona que lo emitió.

D. Erró el Departamento de Asuntos del Consumidor (DACo) al emitir orden contra Caribe Federal Credit Union (CFCU) a favor de la querellante, sin que existiera o surgiera ni una

---

[11] Íd., págs. 12-18.
[12] Íd., págs. 41-50.
[13] Íd.
[14] Íd.
[15] Íd., págs. 55-67.

sola imputación de daño o responsabilidad contra la financiera en las determinaciones de hecho o conclusiones de derecho hechas por el propio Departamento.

E. Erró el Departamento de Asuntos del Consumidor (DACo) al dictar Resolución en rebeldía tras haber notificado una citación a vista deficiente, imponiendo la sanción más severa sin apercibimiento previo.

El 29 de mayo de 2025, emitimos *Resolución* mediante la cual le concedimos a la Recurrida un término para que presentara su alegato en oposición. Ha transcurrido el plazo concedido sin que ésta compareciera o solicitara prórroga a esos efectos.

En vista de lo anterior, adjudicamos los méritos del recurso sin el beneficio de su comparecencia.

**II.**

**A.**

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Oficina de Ética Gubernamental v. Martínez Giraud, 210 DPR 79, 88-89 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Super Asphalt v. AFI, 206 DPR 803, 819 (2021).

Sin embargo, recientemente, nuestro Tribunal Supremo cambió esta norma de deferencia hacia las decisiones administrativas, al adoptar la determinación del Tribunal Supremo de los Estados Unidos en el caso de Loper Bright Enterprises v. Raimondo, 603 US 369 (2024). En específico, determinó que la interpretación de las leyes es una tarea que le corresponde a los tribunales y dispuso que éstos, en el ejercicio de su función revisora, deberán actuar con el rigor que prescribe la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico y no ser guiados por

la deferencia automática. Vázquez v. Consejo de Titulares, 2025 TSPR 56, 215 DPR ___.

La Sección 4.5 de la LPAU, dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". 3 LPRA sec. 9675. Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

Las determinaciones de hechos de los organismos y agencias administrativas tienen a su favor una presunción de regularidad y corrección. Henríquez v. Consejo Educación Superior, 120 DPR 194, 210 (1987). De manera que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si éstas están sostenidas por evidencia sustancial que surja del expediente administrativo. Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba

descansa entonces sobre la parte que impugna la determinación administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999). Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, deben ser revisadas en todos sus aspectos. 3 LPRA sec. 9675. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

El foro judicial podrá sustituir el criterio del organismo administrativo por el propio únicamente en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. No obstante, es axioma judicial que, ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. Dye-Tex de P.R., Inc. v. Royal Ins. Co., 150 DPR 658, 662 (2000).

Sin embargo, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**B.**

Mediante la aprobación de la Ley Núm. 7 de 24 de septiembre de 1979, según enmendada, conocida como la "Ley de Garantías de Vehículos

de Motor", 10 LPRA secs. 2051 *et seq.*, el legislador consignó como fin ulterior "proteger al consumidor de vehículos de motor nuevos [y usados] de Puerto Rico, asegurándole que los vehículos de motor que adquiere han de tener las mismas garantías de fábrica que el fabricante o manufacturero otorga a estos vehículos de motor en los Estados Unidos continentales". 10 LPRA sec. 2053. Así pues, se considera "consumidor" a "toda persona que **adquiera un vehículo de motor para uso personal, comercial, agrícola o industrial y no para propósitos de reventa**". 10 LPRA sec. 2052(i) (énfasis suplido).

Dicho estatuto facultó al DACo a adoptar reglamentos para implantar los propósitos allí reconocidos. 10 LPRA sec. 2063. Así, el Reglamento Núm. 7159 del 1 de junio de 2006, según enmendado, conocido como el "Reglamento de Garantías de Vehículos de Motor" (en adelante, el "Reglamento Núm. 7159"), fue promulgado con el objetivo de "proteger adecuadamente a los consumidores y sus inversiones en la adquisición de vehículos de motor". A su vez, procura que todo vehículo de motor comprado en Puerto Rico sirva para los propósitos por el cual fue adquirido y reúna las condiciones mínimas necesarias para proteger la vida del consumidor y su propiedad. Además, tiene como finalidad evitar prácticas ilegales en la venta de vehículos de motor. Regla 2 del Reglamento Núm. 7159, *supra*.

En lo aquí pertinente, define los términos garantía y garantía mínima de la siguiente manera:

(k) Garantía- Cualquier garantía escrita expedida por el manufacturero.

(l) Garantía mínima- Es el período de tiempo o uso en el cual el manufacturero de un vehículo de motor viene obligado a responderle al consumidor por los defectos mecánicos del vehículo de motor según las especificaciones del certificado de garantía provisto como parte de la compra del vehículo de motor. En ausencia de disposición legal especial al efecto, es "el período de tres (3) años o 36,000 millas recorridas, contados a partir de la fecha en la cual el vehículo de motor fue originalmente entregado al consumidor, lo que ocurra primero, que todo fabricante, manufacturero o distribuidor de fábrica debe extender a sus distintas marcas y modelos en Puerto Rico, que no podrá ser inferior, en términos de millaje y duración, a la extendida por el fabricante o manufacturero para beneficio del consumidor en los Estados Unidos

continentales. Será siempre aplicable en Puerto Rico la que resulte mayor al alcance y amplitud de sus beneficios.

En el caso particular de los vehículos de motor "verde", la garantía mínima se ajustará para ser igual o mejor en términos de millaje y duración, a la extendida por el fabricante o manufacturero para beneficio del consumidor en los Estados Unidos Continentales. Regla 5 del Reglamento Núm. 7159, *supra.*

Además, establece que tanto el fabricante como el manufacturero podrán conceder una garantía más amplia y de mayor alcance a la exigida por el Reglamento. Regla 15.1 del Reglamento Núm. 7159, *supra.* Atinente a lo anterior, la Regla 22 del Reglamento Núm. 7159, le confiere al DACo la potestad de decretar la resolución del contrato o reducir proporcionalmente el precio de venta, de conformidad con las disposiciones del Código Civil de Puerto Rico "en aquellos casos en que el vendedor, distribuidor autorizado o concesionario, distribuidor de fábrica o fabricante, dentro de los términos de la garantía de fábrica, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos".

**C.**

La Ley Núm. 68 de 19 de junio de 1964, mejor conocida como la "Ley de Ventas a Plazos y Compañías de Financiamiento", según enmendada, regula las ventas al por menor a plazos y a las compañías de financiamiento. 10 LPRA sec. 731 *et seq* (en adelante, "Ley Núm. 68"). En su parte pertinente, el Artículo 202 (4) del estatuto dispone que todo contrato de ventas al por menor a plazos deberá contener el siguiente aviso al cesionario:

El cesionario que reciba o adquiera el presente contrato al por menor a plazos o un pagaré relacionado con éste, **quedará sujeto en igualdad de condiciones a cualquier reclamación o defensa que el comprador pueda interponer en contra del vendedor.** El cesionario del contrato tendrá derecho a presentar contra el vendedor todas las reclamaciones y defensas que el comprador pueda levantar contra el vendedor de los artículos o servicios. 10 LPRA sec. 742 (énfasis suplido); *véase, además,* Otero Rivera v. Bella Retail Group, Inc., 214 DPR _____ (2024); 2024 TSPR 70.

Se trata de una "relación tripartita" entre el comprador, el vendedor y la entidad financiera, mediante la cual el vendedor cede su posición en el contrato de venta condicional a la compañía financiera, incluyendo sus

derechos y obligaciones. <u>Berríos v. Tito Zambrana Auto, Inc</u>., 123 DPR 317, 329 (1989). Perfeccionada la cesión, el vendedor le cede a una entidad financiera su posición frente al comprador a cambio del pago inmediato del precio pactado. <u>Otero Rivera v. Bella Retail Group, Inc.</u>, *supra*, pág. 11. Es decir, se "transforma la operación para el vendedor prácticamente en una venta al contado y lo que deja subsistente es la obligación de pago en los plazos convenidos al quedar el comprador deudor de la entidad financiera cesionaria". <u>Íd</u>. (citando a <u>Berríos v. Tito Zambrana Auto, Inc</u>., *supra*, pág. 329).

El Artículo 209 (a) y (f) de la Ley Núm. 68 proscribe cualquier disposición contractual a través de la cual el comprador renuncie a interponer contra un cesionario o un vendedor, respectivamente, cualquier reclamación o defensa que surja de la venta. 10 LPRA sec. 749 (a) y (f). Así también, provee para que cuando un cesionario adquiera un contrato o pagaré, se remita un aviso al comprador informando la cesión. <u>Íd</u>. Además, requiere que la aludida notificación disponga lo siguiente:

> Si el vendedor no hubiere cumplido todas sus obligaciones para con usted, usted deberá notificarlo al cesionario, por escrito, mediante correo certificado con acuse de recibo, a la dirección indicada en este aviso, dentro de los 20 días siguientes a la fecha en que tenga conocimiento de algún hecho que pueda dar lugar a una causa de acción o defensa que surja de la venta y que pudiera usted tener en contra del vendedor. <u>Íd</u>.

Según ha manifestado nuestro Tribunal Supremo, el propósito de la precitada disposición es "proteger al cesionario de un contrato de ventas a plazos de aquellas reclamaciones por acciones de saneamiento por evicción o vicios ocultos". <u>Berríos v. Tito Zambrana Auto, Inc</u>., *supra*, pág. 335. Bajo estas circunstancias, el vendedor o cedente es responsable de asegurarle el patrimonio al cesionario, toda vez que este último no participó del perfeccionamiento del contrato base de la relación entre las partes. <u>Otero Rivera v. Bella Retail Group, Inc.</u>, *supra*, pág. 13.

Cónsono con lo anterior, nuestro máximo foro judicial estatal ha determinado que el comprador tiene la potestad legal de oponer contra la entidad financiera las mismas reclamaciones y defensas que hubiera tenido contra el vendedor o cedente. <u>Berríos v. Tito Zambrana Auto, Inc</u>., *supra*,

págs. 334-335. Por tal motivo, el comprador puede solicitar la aplicación de la figura de la resolución del contrato por dejar de cumplir una de las partes la obligación que nace del vínculo entre las partes. Otero Rivera v. Bella Retail Group, Inc., *supra*, pág. 15. Es decir, la conexión existente entre el contrato de venta condicional a plazos y el de financiamiento podría conllevar que la ineficacia de uno provoca el desvanecimiento del otro. Íd.

En resumidas cuentas, en este tipo de escenario tripartita en el que proceda la resolución del contrato de venta condicional cada parte deberá devolver lo que le corresponda, a saber: (1) el vendedor del vehículo de motor deberá devolverle al consumidor cualquier dinero por concepto de depósito o "trade in", si alguno, y devolverle a la entidad financiera el dinero recibido del préstamo; (2) la entidad financiera deberá devolverle al consumidor los pagos mensuales efectuados por el financiamiento del vehículo de motor, y (3) el consumidor deberá devolverle al vendedor el vehículo de motor. Íd., pág. 24.

**D.**

La rebeldía se define como la posición procesal en que se coloca la parte que ha dejado de cumplir un deber procesal o de ejercitar su derecho de defenderse. Rodríguez v. Rivera, 155 DPR 838, 848 (2002). Las Reglas de Procedimiento Civil establecen que procede la anotación de rebeldía "[c]uando una parte contra la cual se solicite una sentencia que conceda un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma, según se dispone en estas reglas". 32 LPRA Ap. V, R. 45.1.

Este remedio puede ser utilizado tanto en las instancias mencionadas, como en aquéllas en que una de las partes en el pleito no ha cumplido con algún mandato del tribunal, que conlleva la obligación del foro judicial a imponerle la rebeldía. Ocasio v. Kelly Servs., 163 DPR 653, 670 (2005). A pesar de ello, la anotación de rebeldía "como sanción por su incumplimiento con una orden del tribunal siempre se debe dar dentro del marco de lo que es justo, y la ausencia de tal justicia equivaldría a un abuso de discreción". Rivera Figueroa v. Joe's European Shop, 183 DPR 580, 590 (2011).

Se ha resuelto que la consecuencia jurídica de anotar la rebeldía a una parte en un pleito será tener como aceptadas cada una de las alegaciones bien formuladas que hubieran sido incluidas en la demanda. Vélez v. Boy Scouts of America, 145 DPR 528, 534 (1998). Ahora bien, en el descargue de sus funciones, el Tribunal de Primera Instancia está en la obligación de comprobar cualquier aseveración esgrimida mediante la aportación de prueba que demuestra lo alegado. Hernández v. Espinosa, 145 DPR 248, 272 (1998). "[S]i un tribunal necesita, para poder dictar sentencia en rebeldía, comprobar la veracidad de cualquier alegación o hacer una investigación sobre cualquier otro asunto, deberá celebrar las vistas que estime necesarias y adecuadas." Ocasio v. Kelly Servs., *supra*, pág. 671.

En armonía con lo anterior, nuestro Tribunal Supremo ha reiterado que en el ámbito de la adjudicación de un pleito en rebeldía los foros judiciales no pueden actuar como meros autómatas. Íd., págs. 671-672. Es decir, "un trámite en rebeldía no garantiza per se, una sentencia favorable al demandante; el demandado no admite hechos incorrectamente alegados como tampoco conclusiones de derecho". Continental Ins. Co. v. Isleta Marina, 106 DPR 809, 817 (1978). Nótese que el objetivo de este mecanismo procesal no es conferirle una ventaja al demandante para obtener una sentencia a su favor, sino que lo que se persigue es estimular la tramitación ágil y efectiva de los pleitos ante los tribunales. J.R.T. v. Missy Mfg. Corp., 99 DPR 805, 811 (1971).

Por este motivo, un tribunal, al momento de resolver una solicitud de anotación de rebeldía, debe interpretar la Regla 45 de Procedimiento Civil, *supra*, de forma liberal, lo que significa que debe siempre resolver cualquier duda a favor de la parte que se opone a la concesión de la rebeldía. Esto es cónsono con la política judicial que prefiere que los casos se vean en sus méritos. Neptune Packing Corp. v. Wackenhut Corp., 120 DPR 283, 293 (1988); Imp. Vilca, Inc v. Hogares Crea, Inc., 118 DPR 679, 686 (1987).

**III.**

El Recurrente nos solicita que revoquemos la *Resolución* recurrida fundamentada en varios aspectos procesales ocurridos durante la tramitación de la "**Querella**", así como a base de las cuestiones de derecho que adjudicó el DACo posterior a la celebración de la vista administrativa.

En su primer señalamiento de error el Recurrente aduce que el dictamen recurrido es nulo. Basa su postura en que el DACo no notificó a Auto Electric de la citación para la vista administrativa, a pesar de que tenía su dirección de correo electrónico. Al examinar el legajo apelativo que nos ocupa, notamos que Auto Electric sí fue notificada del señalamiento de vista administrativa a la dirección de correo electrónico provista por dicha parte cuando compareció a solicitar el reseñalamiento de la misma. Siendo esa la realidad que refleja el legajo apelativo ante nos, se equivoca CFCU al sostener que la notificación de vista administrativa fue deficiente.

Por otro lado, el Recurrente alega que el DACo estaba impedido de dictar la *Resolución* en rebeldía. Ello, debido a que "la advertencia contenida en la citación de vista fue legalmente insuficiente", al no informar que podía anotársele la rebeldía. También arguye que el DACo lo privó de su derecho a un debido proceso de ley, al admitir el informe pericial que presentó la Recurrida durante la celebración de la vista administrativa, sin haber sido anunciado con treinta (30) días de anticipación y sin haberlo notificado a las demás partes como requiere el Reglamento de Procedimientos Adjudicativos del DACo, Reglamento Núm. 8034 de 14 de junio de 2011 (en adelante, "Reglamento Núm. 8034"). Añade que el informe se admitió sin el testimonio del perito, lo que impidió que este fuera contrainterrogado. No le asiste la razón.

Al examinar la totalidad del expediente en autos, advertimos que el organismo administrativo notificó la "**Querella**" el 18 de noviembre de 2024. A partir de esta fecha, el Recurrente tenía veinte (20) días para responder al reclamo. Es decir, CFCU tenía hasta el 9 de diciembre de 2024 para presentar su contestación. Sin embargo, no fue hasta el 11 de diciembre de

2024, que este sometió su respuesta y una *Solicitud de Producción de Documentos*.[16]

Así pues, tanto la *Contestación a la Querella*, como su petición fue tardía. No obstante, ello no conllevó la anotación de la rebeldía por parte de la agencia. Como si lo anterior fuera poco, el Recurrente tampoco compareció a la vista administrativa celebrada el 25 de marzo de 2025, por lo que la agencia procedió a anotarle la rebeldía. Del examen del Reglamento Núm. 8034, *supra*, se desprende que el DACo tiene amplia discreción para imponer las medidas o emitir las órdenes que sean necesarias cuando una parte no comparece a la vista administrativa, conforme provee la Regla 8.1 del referido cuerpo reglamentario. Es decir, a la luz de las pautas que regulan los procesos adjudicativos ante el DACo, el juez administrativo que preside los procedimientos tiene la potestad de imponer las sanciones que entienda pertinentes por cualquier incomparecencia injustificada y/o dictar cualquier otra orden que en derecho proceda. *Véanse*, Reglas 8.1 y 20.2 del Reglamento Núm. 8034, *supra*.

De manera que los planteamientos sobre la insuficiencia en la advertencia al señalamiento de vista, la violación a su derecho para someter prueba, contrainterrogar, refutar la evidencia en su contra o efectuar planteamientos sobre prueba ofrecida y no producida son infundadas e improcedentes en derecho, ya que la propia parte recurrente fue la que se colocó en la posición procesal de no defenderse, al no comparecer a la vista administrativa. En todo caso, y asumiendo que procedía un planteamiento de admisión de prueba, era indispensable que contáramos con una transcripción de la prueba presentada durante la vista y el Recurrente incumplió con proveer la misma, de conformidad con el Reglamento de este Tribunal. Por consiguiente, los errores señalados no se cometieron.

Por último, el Recurrente le imputa al DACo haber actuado de manera *ultra vires*, al imponerle la obligación de reembolsar a la señora Menéndez Meléndez las mensualidades pagadas por ésta, sin antes haberle imputado responsabilidad alguna por los actos, omisiones e incumplimientos de Auto

---

[16] Apéndice del Recurrente, págs. 19-20.

Electric que provocaron la resolución del contrato de compraventa. Asegura que las obligaciones y responsabilidades establecidas en el Reglamento Núm. 7159, *supra*, son imputables únicamente al vendedor. Afirma que CFCU no se obligó a responder por los desperfectos de la unidad y que lo único que hizo fue proveer el financiamiento para la compra del vehículo. Además, expuso que nuestro ordenamiento jurídico establece que la cesión de un contrato de compraventa a una entidad financiera no libera al vendedor de responder frente al comprador por el saneamiento del auto vendido.

Por ello, entiende que el decreto de nulidad del contrato original sólo obliga a Auto Electric a resarcir a la Recurrida por los pagos realizados por ésta y no opera en contra de CFCU. Añade que la *Resolución* guardó silencio sobre cómo el Recurrente recobrará el dinero devuelto a la Recurrida, lo que lo deja desprovisto de un remedio adecuado. Veamos.

Después de evaluar lo resuelto por el DACo y el derecho aplicable, somos del criterio que el ente administrativo no erró al determinar que CFCU debía devolver las mensualidades pagadas por la señora Menéndez Meléndez. La norma previamente esbozada en la parte precedente de esta *Sentencia* claramente dispone que el cesionario de un contrato al por menor a plazos, en este caso CFCU, queda igualmente obligado a responder ante cualquier reclamación que la parte compradora interponga contra el vendedor, especialmente cuando se solicita la resolución del contrato de compraventa. Otero Rivera v. Bella Retail Group, Inc., *supra*. De hecho, en *Otero Rivera*, el Tribunal Supremo resolvió recientemente que, en este tipo de relación contractual particular, los remedios que en derecho proceden son los siguientes:

> (1) el vendedor del vehículo de motor deberá devolverle al consumidor cualquier dinero por concepto de depósito o "trade in", si alguno, y devolverle a la entidad financiera el dinero recibido del préstamo;
> (2) **la entidad financiera deberá devolverle al consumidor los pagos mensuales efectuados por el financiamiento del vehículo de motor**, y
> (3) el consumidor deberá devolverle al vendedor el vehículo de motor. Otero Rivera v. Bella Retail Group, Inc., *supra.*

Por tanto, vemos cómo los remedios concedidos por el DACo en la *Resolución* que nos ocupa se ajustaron taxativamente a lo resuelto por el máximo foro judicial en *Otero Rivera*. Ahora bien, el Recurrente no queda desprovisto de remedio, ya que claramente tiene la facultad para reclamar la cuantía que desembolsó como cesionario de la transacción en controversia. Íd. En este caso, luego de decretar la nulidad del contrato de compraventa, el DACo determinó que:

> […] cada parte deberá devolver lo que le corresponda, a saber: (1) el vendedor del vehículo de motor deberá devolverle al consumidor cualquier dinero por concepto de depósito, pronto o 'trade in', si alguno, **y devolverle a la entidad financiera el dinero recibido del préstamo;** (2) la entidad financiera deberá devolverle al consumidor los pagos mensuales efectuados por el financiamiento del vehículo de motor, y (3) el consumidor deberá devolverle al vendedor el vehículo de motor.[17]

Como vemos, la agencia no actuó ni abusó de su discreción al imponerle al Recurrente la obligación de devolver las mensualidades pagadas por la Recurrida, pues el ente administrativo también ordenó a Auto Electric devolver el dinero que recibió del préstamo a CFCU, como lo dispone nuestro ordenamiento.

Así pues, luego de un análisis detenido del caso de epígrafe, concluimos expresamente que el Recurrente no aportó evidencia suficiente para derrotar la presunción de corrección de la cual están investidas las decisiones del foro administrativo. En el ejercicio de nuestra función revisora, concluimos que procede darle deferencia a la especialización, experiencia y las cuestiones propias de la discreción o pericia de la agencia administrativa. Igualmente, surge del análisis del estado de derecho aplicable que la agencia no erró en su interpretación. Tal y como hemos adelantado, somos de la opinión de que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron.

---

[17] Apéndice del Recurrente, pág. 49.

## IV.

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones